IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

Vs.                          No. 10-40035-01-SAC

DION M. LEE-SPEIGHT,

        Defendant.

MEMORANDUM AND ORDER

This case comes before the court on the defendant Dion M. Lee-Speight's pretrial motion to suppress all evidence seized as a result of the traffic stop on November 10, 2009. The defendant's motion describes this evidence as the pistol and suspected marijuana seized from him during the stop, the subsequent statements made by the defendant, and the officer's observations related to the same. (Dk. 12). The defendant's motion singularly challenges the lawfulness of the traffic stop and concludes that all evidence seized and any statements made concerning the evidence are fruit of the illegal traffic stop. Specifically, the defendant contends that the computer report of "not on file" for the license plate found on the pickup truck being driven by the defendant did not provide

1

reasonable suspicion of a traffic violation when the license plate appeared otherwise valid and bore an unexpired registration decal.

On June 8, 2010, the court conducted an evidentiary hearing at which Officer Kevin Schulz testified about the November 10th traffic stop. Following the hearing, the parties requested additional time to submit supplemental memoranda. Both sides have filed these additional matters. After reviewing the filings and the evidence from the hearing and after researching the relevant issues, the court is ready to rule.

**INDICTMENT**

The defendant is the sole person named in the indictment that charges him with: Count one, possession with intent to distribute less than 50 kilograms of marijuana; Count two, possession of a firearm after a felony conviction; and Count three, possession of a firearm in furtherance of a drug trafficking crime.

**FACTS**

On November 10, 2009, at approximately 12:15 a.m., Topeka Police Officer Kevin Schulz was patrolling his assigned area in southeast Topeka. He was driving westbound on 26th Street when he observed a Chevy Silverado pickup truck turn in front of him. Officer Schulz's vehicle

is equipped with a Mobile Database Terminal ("MDT") that connects to the state computer system and can check registrations and records of other governmental agencies. Officer Schulz testified that as part of his patrol routine he frequently runs MDT checks on license plates due to the high volume of illegal, stolen or altered license plates in his patrol area. Following his practice, Schulz ran the license plates on the Silverado truck. At this point, the officer also observed that the truck's license plate was not illuminated by lights as required by state law. Schulz also noted that it's not his practice to stop all vehicles for tag light violations.

Before he received the MDT results for the truck's license plate, Schulz observed the truck abruptly pull over. After driving past the parked truck, Schulz received the MDT message that the Kansas license plate was "not on file" in this state. By training and experience, Schulz had learned this message meant that his MDT may not be working or that the truck may not be properly registered and the license plate could be altered or was mounted on the wrong car. To check the MDT's operation, Schulz ran the license plate on a parked car, and MDT confirmed the car was registered. Because of the pickup's abrupt stop and the MDT results, the officer decided to station himself in a nearby parking lot and observe the parked

truck and driver. His plans were to conduct a traffic stop when the truck resumed traveling and to check its registration paperwork to determine whether it was lawfully registered.

Officer Schulz observed that the driver remained in the truck while someone walked up to it. Officer Schulz could not determine the reason for this contact from what he could see. After waiting five to ten minutes, Officer Schulz left the area. When he returned, he saw the truck being driven away, so he started following it and ran a second license plate check. He received the same MDT results, "not on file." The officer then activated his emergency light bar for a traffic stop based on the registration not being on file and on the failure to have the license plate properly illuminated.

The truck, however, did not pull over immediately but continued traveling within the speed limit for five or six more blocks. Officer Schulz gave several siren yelps and then fully activated his siren until the truck eventually pulled over. The defendant told the officer he had not stopped because he was calling someone for a ride, since his driver's license was revoked and he knew he was going to jail. A Kansas Highway Patrol Trooper subsequently arrived as backup, and his patrol car's video camera

filmed the search of the defendant's person and the discovery of two baggies and a firearm.  The video recording also captures the defendant requesting Officer Schulz show him that the truck's license plate lights were not working.  The recording does not show Officer Schulz meeting the defendant's request.   Schulz did testify at the hearing that he personally confirmed that the truck's tag lights were not operating.  Officer Schulz also checked the registration paperwork that showed the license plate was valid and the pickup was properly registered.  The defendant was arrested, and the truck was released to the defendant's sister who was its registered owner.

**ARGUMENTS AND ANALYSIS**

The defendant posits that because the license plate facially bore all indicia of authenticity, including a current registration decal, the officer lacked reasonable suspicion to stop the pickup based on the MDT computer search results showing the registration was "not on file."  The defendant disputes that a reasonable suspicion of an unregistered vehicle or of a counterfeit or altered license plate can arise from a computer search of a state database when the face of the license plate otherwise lacks any indicia of being counterfeit or altered.  The defendant challenges the

rationale of an officer wanting to check registration paperwork to determine the validity of a registration, when the license plate is suppose to be evidence of registration and when the paperwork could be more easily altered and falsified. The defendant asks the court to discredit Officer Schulz's testimony on the lack of lighting for the truck's license plate. The defendant bases this request on the defendant's statements recorded during the traffic stop, on the supposed inconsistencies in the Officer's testimony, on the Officer's apparent ability to read the license plate number prior to the traffic stop, and on the Officer's inaccurate summary of Kansas law concerning the illumination of license plates.

"The Supreme Court has said there are three types of police-citizen encounters." *United States v. Brown*, 496 F.3d 1070, 1074 (10th Cir. 2007). The first type is a consensual encounter that does not trigger protection under the Fourth Amendment, the second is an investigative detention that constitutes a "Fourth Amendment seizure[ ] of limited scope and duration and must be supported by a reasonable suspicion of criminal activity," and the third type is an arrest that is "the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." *Id.* (quotation and citation omitted).

Traffic stops are seizures subject to Fourth Amendment analysis. *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005). Most analogous to investigative detentions, traffic stops are scrutinized for lawfulness under the two-prong analysis set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* The first prong addresses "whether the officer's action was justified at its inception." 392 U.S. at 20. The second prong is whether the detention "was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.*

"A traffic stop is justified at its inception if an officer has . . . reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir.), *cert. denied*, 129 S.Ct. 2881 (2009); *see United States v. Cortez-Galaviz*, 495 F.3d 1203, 1205-06 (10th Cir. 2007) ("[A] traffic stop will be held reasonable when, under the totality of the circumstances, the officer bears a 'reasonable suspicion' that criminal activity 'may be afoot.'") (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)), *cert. denied*, 552 U.S. 1123 (2008). "For an officer to have reasonable suspicion to seize an individual, the officer 'must have a particularized and objective basis for suspecting the particular person

7

stopped of criminal activity.'" *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (quoting *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000)). Reasonable suspicion is "something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7, (1989) (internal quotation marks omitted). A court "looks only at whether the stop was 'objectively justified'; the officer's subjective motives are irrelevant." *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 953 (2009).

It is a traffic violation in Kansas: "[t]o display or cause or permit to be displayed, or to have in possession, any registration receipt, certificate of title, registration license plate, registration decal, . . . knowing the same to be fictitious or to have been canceled, revoked, suspended or altered." K.S.A. 8-142. It is also a violation of this same statute "[t]o operate, or for the owner thereof knowingly to permit the operation, upon a highway of any vehicle, as defined in K.S.A. 8-126, . . ., which is not registered, . . . ." K.S.A. 8-142. Kansas law requires the following for vehicles: "Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty (50) feet to the rear." K.S.A.

8

8-1706(c). The government posits that Officer Schulz had reasonable suspicion to activate his emergency lights and conduct a traffic stop for either or both the registration violations or the license plate lamp violation.

The case law does not support the defendant's novel arguments. Courts repeatedly have found that officers have reasonable suspicion to stop a vehicle and check for proper registration after a computer search showed the license tag was not on file. *See, e.g., United States v. Stephens*, 350 F.3d 778, 780 (8th Cir. 2003)("In this case, the information obtained from a computer check, . . ., provided the police with reasonable suspicion to stop the vehicle and investigate whether the vehicle was properly registered and whether Stephens was operating the vehicle with a valid license."); *United States v. Garcia-Ballesteros*, 74 F.3d 1250, 1996 WL 3920, at *1 (10th Cir. 1996) (Table) ("We agree with district court's conclusion that under the circumstances, particularly the fact that no registration was on file for the vehicle, the agent was justified in making the initial stop."); *United States v. $85,688.00 in U.S. Currency*, 2010 WL 1257634, at *3 (D. Utah Mar. 25, 2010) (Trooper had reasonable suspicion for traffic stop "after running his Missouri license plate and learning that there was no return of a registration on file."); *see also United States v.*

*Campbell*, 549 F.3d 364, 371-72 (6th Cir. 2008) (reasonable suspicion in part to determine whether vehicle was properly registered after a report that the tags "were not on file"); *United States v. Sanchez*, 2009 WL 3836398 at *6-8 (D. Kan. Nov. 16, 2009) (Reasonable suspicion included a "not on file" computer return on a temporary tag registration.) A federal district court in Utah has observed:

> While recognizing that computer information is not flawless, courts have routinely concluded that officers may reasonably rely on such information as justification for stopping a vehicle. *See, e.g., United States v. Varela*, Slip Copy, 2006 WL 120263 (D.Utah Jan.17, 2006) (finding that officer had reasonable suspicion sufficient to stop vehicle and ask driver for registration documents where computer search indicated that the registration had expired, notwithstanding the fact that sticker on license plate showed registration was current); *see also, e.g., United States v. Miguel*, 86 Fed. Appx. 342, 2004 WL 103124 (9th Cir. Jan.21, 2004) (concluding that police had reasonable suspicion required for stop of defendant's vehicle, given the belief, although possibly mistaken, that defendant was driving an unregistered vehicle in violation of state law; any mistake regarding expiration of registration would have been a mistake of fact based on a computer error); *United States v. White*, 1999 WL 1939263 (M.D.N.C. Jan.14, 1999) (concluding that "not on file" response to officer's computer inquiry regarding vehicle registration provided reasonable suspicion of violation of state law), *aff'd* 201 F.3d 439 (4th Cir.1999).
>
> For example, in *United States v. Varela*, Slip Copy, 2006 WL 120263 (D. Utah Jan 17, 2006), a police officer, using his laptop computer, initiated a license plate check of a vehicle. The state computer used by the Salt Lake City Police Department showed that the vehicle's registration had expired. Based on this information, the officer initiated a traffic stop. After stopping the vehicle, the officer noticed a sticker on the rear license plate that showed a current

> registration. Nonetheless, the officer approached the vehicle and asked the driver for his license and registration. Id. at *2. The paper registration revealed that the sticker was legitimate and the registration was current.
>
> In denying the defendant's motion to suppress, the court in Varela reasoned that, despite the current registration sticker, the officer "continued to have reasonable suspicion that the registration had expired because he had already found that the state computer showed the registration to be expired." Id. at *3. The court concluded: "It was reasonable to rely on the state database in determining to initiate the stop. There was no evidence that [the officer] had knowledge that the state computer could lag behind by up to two days. Thus, [the officer] had a reasonable suspicion that a traffic offense had occurred and that a stop should be made." Id. at *3
>
> Like the court in *Varela*, this court is of the opinion that, upon receiving the computer response "not on file," Trooper Carrubba had reasonable articulable suspicion that a traffic violation was occurring. Accordingly, Trooper Carrubba lawfully stopped the defendant's vehicle.

*United States v. Hernandez-Velasco*, 2006 WL 2129468 at *4-5 (D. Utah Jul. 28, 2006).

In *United States v. Cortez-Galaviz*, 495 F.3d at 1204, the defendant argued the officers relied on information from a state computer system on "vehicle insurance and registration" that "was too meager to give rise to reasonable suspicion of unlawful conduct, too unreliable, and too stale." A computer check of the license plate number indicated that as of twenty days ago insurance was "not found." *Id.* The Tenth Circuit upheld the finding of reasonable suspicion relying in part on this analysis:

> To be sure, the "not found" response Officer Rapela received from the database did not as definitively indicate criminal activity as a "no" response, but neither did it equate to an exculpatory "yes," and the suggestive ambiguity of the particularized and objective information Officer Rapela had at hand justified his decision to warrant a brief traffic stop-even though it surely would not have sufficed for an arrest. Indeed, the resolution of particularized and objective yet still ambiguous-potentially lawful, potentially unlawful-facts is the central purpose of an investigative detention. *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) ("Even in *Terry*, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation. . . . *Terry* recognized that the officers could detain the individuals to resolve the ambiguity"); *Terry*, 392 U.S. at 22 (recognizing "that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest").

495 F.3d at 1206. Certainly, *Cortez-Galaviz* can be distinguished as involving proof of insurance which is not displayed on the license plate, but it still offers some pertinent parallels. As Officer Schulz suggested, the MDT report of "not on file" was not definitive of criminal liability and did not rule out the possibility of a valid registration, but it was particularized and objective information of a potentially unlawful situation that justified a brief traffic stop. There is nothing of record to suggest any unreasonableness in Officer Schulz's reliance on these computer checks to justify a traffic stop for the purpose of investigating whether a vehicle is registered. "Indeed, the resolution of particularized and objective yet still ambiguous-potentially

12

lawful, potentially unlawful--facts is the central purpose of an investigative detention." *Id.* (citation omitted).

The court rejects the defendant's proposition that an officer is unable to base reasonable suspicion upon the results of a computer search of a vehicle's license plate when the license plate on its face appears valid. Kansas law requires a vehicle to be registered, and the defendant correctly notes that a license plate is "used to externally evidence registration of a vehicle." K.S.A. 8-147. Of course, the statute does not say that the license plate is the only available and reliable evidence of registration. Such other reasonably available and reliable proof necessarily includes the state's computer database of vehicle registrations and the owner's possession of a registration receipt. Thus, the particularized and objective information from a computer database search showing no registration on file and the appearance of a license plate as current and lawful creates an ambiguous situation, one that is potentially lawful and potentially unlawful, and certainly satisfies the central purpose of an investigative detention. Moreover, Officer Schulz testified to having stopped vehicles that had license plates with current registration decals but that further investigation revealed were not registered. Officer Schulz explained that license plates

13

and decals can be stolen or adulterated and that this could be one of the explanations for a MDT "not on file" result.  A circumstance that takes on particular relevance for Officer Schulz who was patrolling in an area with a high volume of stolen cars and license plates and who noticed the pickup truck abruptly pull over once he started following it.  There is more than enough for reasonable suspicion here based on the MDT "not on file" result, the high-crime area, and the suspicious driving of the pickup.  *See United States v. Dennison*,  410 F.3d 1203, 1208 (10th Cir.) ("high-crime area is not, standing alone, enough to provide reasonable suspicion, but it may be a relevant contextual consideration in a Terry analysis." (internal quotation marks and citation omitted)), *cert. denied*, 546 U.S. 955 (2005).

Additionally, the court finds to be credible the testimony of Officer Schulz that he reasonably believed the tag lamps were not working on the pickup truck in violation of Kansas law when he made the traffic stop.  The video recording shows the defendant complaining and second-guessing more than the tag lamp violation during this traffic stop.  The court found no significant inconsistencies in Officer Schulz's testimony on this ground for the traffic stop.  He relied on this violation as one of the grounds for the stop and confirmed the lamps were not working during the stop.

That Officer Schulz was able to read the license plate numbers ignores the obvious that his patrol car's headlights would have illuminated the license plate while he was following the pickup truck.  Officer Schulz's inaccurate statement of the statutory distance requirements for a tag lamp is immaterial, for he testified that the inoperable lamp prevented the plate from being visible at a distance of more than twenty feet which is a violation of the statute.[1]  Officer Schulz had reasonable suspicion to conduct the traffic stop due to a violation of the tag lamp statue.

In his supplemental memorandum, the defendant raises for the first time a challenge to what he calls the manner in which the traffic stop was carried.  The defendant complains that Officer Schulz should have conducted the traffic stop after the first MDT result rather than conducting surveillance and making the traffic stop only after the pickup truck began moving again.  The defendant cites no authority nor offers any cogent argument to show he possessed any constitutional rights that were implicated simply because Officer Schulz failed to conduct an earlier traffic stop and chose to maintain open surveillance of the defendant's parked

---

[1] "Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty (50) feet to the rear."  K.S.A. 8-1706.

truck.

The court finds nothing to suggest that the eventual traffic stop was more intrusive than necessary simply because it occurred after the defendant started driving again. The manner in which Officer Schulz executed the investigative detention was reasonably related to its original purpose and his evolving knowledge of the defendant's criminal conduct. None of the case law cited by the defendant justifies this court's inquiry into a patrol officer's routine decision on when to execute a traffic stop for which he has reasonable suspicion. And even if it did, the court would find that concerns for officer safety would warrant delaying a traffic stop until the defendant's vehicle was isolated from acquaintances or friends of the defendant who may have shown an interest in the traffic stop. The defendant's latest challenge is without merit.

IT IS THEREFORE ORDERED that the defendant Dion M. Lee-Speight's pretrial motion to suppress all evidence seized as a result of the traffic stop on November 10, 2009, (Dk. 12) is denied.

Dated this 29th day of June 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge