IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

Vs.

        Nos.  10-40035-01-SAC
                   11-4083-SAC

DION M. LEE-SPEIGHT,

        Defendant.

MEMORANDUM AND ORDER

The Tenth Circuit reversed and remanded this case in part and directed the district court to vacate its order denying Mr. Lee-Speight's motion for relief pursuant to 28 U.S.C. § 2255 on the sole issue of defense counsel's alleged ineffectiveness in not filing a notice of appeal. (Dk. 75). , The panel directed the district court to "further develop the factual record as necessary to resolve in the first instance the merits of" the defendant's § 2255 motion. (Dk. 75, p. 2). The court has fully complied with the circuit's mandate by appointing counsel for Mr. Lee-Speight, by providing the parties with extended periods to supplement the record with submissions, and by determining the need for an evidentiary hearing and conducting the same on February 26, 2014. With the parties' representation that the record is complete, the court issues the following as its findings of fact and conclusions of law pursuant to 28 U.S.C. § 2255(b).

**Background**

During a traffic stop of a pickup that the defendant Dion M. Lee-Speight was driving on November 10, 2009, officers found nine individually bagged quantities of marijuana, one larger bag of marijuana, and a loaded handgun all concealed in a custom-sewn pocket inside the defendant's underwear. (Dk. 41, p. 7). The grand jury returned an indictment charging the defendant with one count of possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) with reference to the general penalty provision in § 924(a)(2) and to the penalty provision in the Armed Career Criminal Act ("ACCA") § 924(e), and one count of possession of a firearm in furtherance of a drug trafficking act in violation of 18 U.S.C. § 924(c). His appointed counsel zealously challenged the traffic stop in a motion to suppress which was denied after an evidentiary hearing. (Dks. 12 and 22). The government subsequently filed a 21 U.S.C. § 851 information disclosing its intent for sentencing to rely on defendant's prior state conviction in September of 2005 for sale of an opiate/narcotic. (Dk. 24). On August 3, 2010, the defendant entered a plea of guilty to count one pursuant to a plea agreement in which the government would dismiss the other two counts and the defendant would "not seek a sentence for Count 1 of less than the lower of the high end of the advisory sentencing guideline

range determined to be appropriate by the Court or 96 months." (Dk. 26, pp. 8-9).[1]

**Findings of Fact**

The defendant's appointed counsel moved the court to continue the sentencing and to allow him to withdraw from his representation of the defendant because of a deteriorated working relationship. This motion was granted. (Dk. 35). The court immediately appointed Thomas Lemon as the defendant's new counsel on October 19, 2010. As Mr. Lemon testified at the hearing, he has served as a CJA attorney for 15 years and represented approximately 100 federal defendants during that period. Upon his appointment in this case, Mr. Lemon received and reviewed the prior counsel's files as well as the discovery provided by the government. He then met with the defendant asking for his thoughts on what was wrong with prior counsel's defense of the case and with the plea agreement that had been made. Seeing that this case had been heavily litigated, Mr. Lemon told the defendant that his prior counsel was "a really good attorney" but that he would take a "fresh" look to see if any mistakes had been made. Mr. Lemon reviewed the PSR and persuaded the PSR's writer to correct one mistake, but this correction had no impact on the sentence. Prior to the sentencing, Mr. Lemon met with the defendant three times and told him that his prior

---

[1] As this court discussed in an earlier order, (Dk. 63), the defendant was facing a 15-year mandatory minimum term on count two based on the applicable ACCA provision, 18 U.S.C. § 924(e)(1).

counsel had negotiated a "good deal" as the agreed sentence was nearly one-half of what he could have faced because of the ACCA's applicability. Mr. Lemon also investigated Mr. Lee-Speight's complaint that he was not the named defendant on one of the listed convictions. Mr. Lemon took him photographic evidence from the prosecutor's office.

At the sentencing hearing, the court announced the tentative sentence of 96 months and its findings that the defendant met the career offender requirements, that the sentencing guideline range was 77 to 96 months, but that the defendant had agreed to not seek a sentence lower than 96 months. (Dk. 55, p. 5-6). The defendant read a prepared statement to the court that addressed taking responsibility for his actions, apologized to friends, family and court, and then stated the following:

> Lastly to Judge Crow, you are a veteran who has earned great respect and dignity in your profession and I cannot and will not try to fill your shoes. But in my opinion, in Count 1, possession with intent to distribute 48 grams of marijuana, I do believe the statutory guidelines are 0 to 120 months in which the prosecution and my defense counsel has agreed upon 96 months.
> Now, in all due respect to the prosecution and to my defense counsel, I was told my best interest had occurred. And in my opinion, I do believe the Court should impose a sentence significant but not greater than necessary and to reflect the seriousness of the crime, to promote respect for the law, and to provide just punishment for the offence.
> In conclusion, I believe that 96 months is greater than necessary and I hope the Court takes my statements into consideration. I thank you for your time.

(R. 55, pp. 8-10). The defendant testified in this § 2255 hearing that his statement at sentencing "stressed" that the length of his imprisonment was

4

"too great for his drug amount." The transcript does not confirm the defendant's characterization of a single sentence as being what he "stressed" in his prepared statement. Nor does the transcript show the defendant directly linked his comment over the length of the sentence to the amount of the drugs involved. As explained in the PSR and mentioned by the court at sentencing, the defendant's effective sentencing guideline range was determined by his career offender status and not by the amount of marijuana. (Dk. 41, p. 9).

The court subsequently imposed a sentence of 96 months and advised the defendant:

> that it is your right to appeal the conviction and sentence, but only to the extent that you have not waived that right in the plea agreement. You can also lose your right to appeal if you do not timely file a notice of appeal in the district court.
> Rule 4(b) of the Federal Rules of Appellate Procedure give you 14 days after the entry of judgment to file a notice of appeal. If you so request, the Clerk of the Court shall immediately prepare and file a notice of appeal on your behalf. If you are unable to pay the cost of an appeal, you have the right to apply for leave to appeal in forma pauperis.

(Dk. 55, pp. 13-14). The sentencing transcript includes no further comments from the defendant. Judgment was entered on December 6, 2010. (Dk. 44).

Mr. Lemon recalled telling the defendant at the conclusion of the sentencing that he had received the agreed upon deal and then asking whether the defendant wanted a notice of appeal filed. The defendant answered that he did not want to appeal. Mr. Lemon told the defendant that if he wanted to appeal then he needed to tell his counsel. Mr. Lemon recalled

5

shaking the defendant's hand at this point and saying that "we're done." Mr. Lemon then sent the defendant a letter dated December 1, 2010, that memorialized their conversation and stated in part:

> Based upon your sentencing in the United States District Court, your case has been concluded. You have informed me that you do not wish to file an appeal in this matter. As a result, I am not filing any further documents on your behalf in this case.
> As it appears all tasks for which we have been engaged by appointment to represent you are completed, we will now close our file and terminate our representation of you. If you believe there are other tasks left for us to accomplish, please notify me immediately. Hearing nothing from you, I will close your file as of December 15, 2010.

(Dk. 82-1). With this letter, the defendant also was sent a copy of the courtroom minute sheet. Mr. Lemon next mailed the defendant a letter dated December 7, 2010, which reads:

> Attached please find two e-mails we received from the Court, along with the documents that are attached. One document is the Statement of Reasons; the other is the judgment in the criminal case. There should be no further documents being forwarded at this time.
> Based upon the above and our previous correspondence, we will consider that this matter is closed and per our previous discussions, close our file.

(Dk. 89-2; Ex. 2, § 2255 Hrg). Mr. Lemon testified it is his practice to send these letters and documents, because he believes his clients would want copies of these records and because clients may change their minds about an appeal. Mr. Lemon testified that the defendant Lee-Speight never asked him to file a notice of appeal and that if he had been asked to file a notice of appeal then he would have performed this ministerial act promptly. The

court finds this testimony credible and consistent with the documentary evidence of record.

At the evidentiary hearing, Mr. Lee-Speight testified that Mr. Lemon visited him at CCA, and they discussed the sentencing guideline range calculated in the PSR and the amount of drugs involved in his offense. He also testified that his statement at the sentencing hearing "stressed" that his time was "too great for his drug amount." The defendant told the court that when the sentencing hearing concluded, he leaned over and informed Mr. Lemon that he still wanted to appeal and that Mr. Lemon replied with that he would be in contact. The defendant said he understood Mr. Lemon to mean that he would be visiting the defendant at CCA. Upon receiving Mr. Lemon's letter dated December 1, 2010, Mr. Lee-Speight wanted to contact his counsel quickly and tried telephoning Mr. Lemon multiple times, but his office would not accept his calls. In his affidavit, the defendant specifically avers that he "place[d] more than 10x phone calls to Mr. Lemon's office within my 14 day window 12-7-10 through 12-15-10!" (Dk. 82-1, p. 5). The defendant testified he used a prepaid phone card to make these multiple attempts. The defendant also said that he telephoned his girlfriend, Muhassen Walker, and asked her to contact Mr. Lemon for him, and she was not able to make contact with Mr. Lemon.

The court does not find Mr. Lee-Speight's testimony to be credible. The documentary evidence contradicts his testimony in several key

respects. The defendant's recollection of what he said at the sentencing hearing is not supported by the hearing transcript. The defendant's testimony that he told counsel to file a notice of appeal is contradicted by Mr. Lemon's letter of December 1, 2010. The defendant's testimony that he tried to telephone Mr. Lemon's office repeatedly is contradicted by exhibit 4, the CCA's December 2010 call detail report for the defendant. Matthew Collins, a senior corrections officer at CCA who serves as the administrator for telephone services, testified that should someone decline to accept an inmate's prepaid call then the report would show a call with "no positive acceptance." Collins testified that exhibit 4 shows no such calls for the defendant in December. Finally, the affidavit of Muhassen Walker strangely omits any averment that she followed through on the defendant's request and tried to contact Mr. Lemon. (Dk. 93-1, p. 2).

Mr. Lemon also testified extensively about his office staff and the office protocol on receiving telephone calls from clients being held in CCA. His testimony establishes that had Mr. Lee-Speight made prepaid calls to Mr. Lemon's office, his secretary or other staff would have accepted the phone call and either forwarded the call to him or taken a message. Mr. Lemon testified that his staff has no record or recollection of the defendant telephoning his office during this period. On cross-examination, Mr. Lemon confirmed that his letters of December 1 and 7 would not have been written if the defendant had instructed him to file a notice of appeal. Mr. Lemon

testified that he did not file a notice of appeal because the defendant expressly said he did not want to appeal and then made no later request of him to file one. Mr. Lemon denied that his failure to file an appeal was based on any opinion he held about the merits of an appeal.

**Conclusions of Law**

A district court may grant relief under § 2255 if it determines "that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI; *Kansas v. Ventris*, 556 U.S. 586 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must prove two prongs: first, "that his 'counsel's representation fell below an objective standard of reasonableness,' *Strickland v. Washington*, 466 U.S. 668, 688 (1984)," and second, "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' *id*. at 694." *United States v. Taylor*, 454 F.3d 1075, 1079 (10th Cir. 2005). "[A] lawyer who disregards specific instructions to perfect a criminal appeal acts in a manner that is both professionally unreasonable and presumptively prejudicial." *United States v. Snitz*, 342 F.3d 1154, 1156 (10th Cir. 2003) (citations omitted). "[W]hen counsel fails to file a requested appeal, a

defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Peguero v. United States*, 526 U.S. 23, 28 (1999)). This rule applies even if the defendant waived significant appellate rights in his plea agreement. *United States v. Garrett*, 402 F.3d 1262, 1266-67 (10th Cir. 2005). Thus, if the defendant actually asked his counsel to file a notice of appeal and his counsel ignored his request, then the defendant is entitled to a delayed appeal.

The defendant has failed to prove with credible evidence that prior to his appeal period running he instructed his counsel, Mr. Lemon, to file a notice of appeal and that Mr. Lemon ignored his request. There is no credible evidence that Mr. Lemon's representation of the defendant fell below the objective standard of reasonableness. Instead of requesting an appeal, the defendant told his counsel after the sentencing that he did not want to appeal. "[A] defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Roe v. Flores-Ortega*, 528 U.S. at 477. After the sentencing, Mr. Lemon twice wrote the defendant and sent him copies of the courtroom minute sheet and the judgment. The letters revealed Mr. Lemon's understanding of the situation that the defendant had instructed him not to file a direct appeal. The defendant subsequently failed to contact Mr. Lemon's office after either of these letters and to request that an appeal

be filed. There is no credible evidence showing that the defendant even attempted such a contact. Mr. Lemon consistently communicated with his client in a prompt and reasonable manner. The defendant has failed to prove he is entitled to any relief under § 2255 on the sole issue on which this case was remanded.

Rule 11 of the Rules Governing Section 2255 proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such a certificate "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the applicant to demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citations omitted). The record offers the defendant nothing from which he could arguably demonstrate this court clearly erred in crediting the testimony of Mr. Lemon and the supporting documentary evidence over the defendant's contrary testimony unsupported by other evidence. The court's resolution of the defendant's § 2255 motion on remand is not reasonably subject to debate. The court will not issue a certificate of appealability for this order.

IT IS THEREFORE ORDERED that the defendant Lee-Speight's pending § 2255 motion (Dk. 57) on the issue of ineffective assistance of counsel for failure to file a notice of appeal is denied;

IT IS FURTHER ORDERED that a certificate of appealability is denied.

Dated this 18th day of March, 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge